UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC OSTERGREN,

    Plaintiff,                             Hon. Sally J. Berens

v.                                                Case No. 1:19-cv-139

HEATHER S. FRICK, et al.,

    Defendants.
_____/

## OPINION

Plaintiff, Eric Ostergren, has sued Heather S. Frick, individually, and David A. Buick, in his official capacity as the Executive Director of the Michigan State Tax Commission, pursuant to 42 U.S.C. § 1983, alleging that Frick violated his First Amendment free speech and Fourteenth Amendment due process rights by: (1) requiring him to sign a Non-Disclosure Agreement (NDA) prohibiting the disclosure of Michigan Certified Assessing Officer training materials; and (2) using his violation of the NDA to threaten disciplinary action against him. Ostergren seeks damages against Frick and a permanent injunction against Buick. Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Frick is entitled to qualified immunity on Ostergren's claim for damages. Defendants further argue that the Commission's post-complaint decision to discontinue use and enforcement of the NDA has mooted Ostergren's request or injunctive relief. Ostergren has responded, and Defendants have replied.[1]

---

[1] Although Ostergren has requested oral argument, the Court determines that the parties' briefs have adequately developed the issues and oral argument is unnecessary.

For the following reasons, the Court will grant Defendants' motion in its entirety.[2]

## I. BACKGROUND

Plaintiff Ostergren had a beef with the local assessor for Gerrish Township, where Ostergren owned a second home. (ECF No.37 at PageID.283.) Ostergren believed that the assessor was misapplying state law in assessing Ostergren's and other residents' properties. Because Ostergren was not an assessor, his public complaints fell on deaf ears. (*Id.*) Ostergren decided to level the playing field by becoming a Michigan Certified Assessing Officer (MCAO).

The Commission consists of three members appointed by the governor with the advice and consent of the senate. M.C.L.A. § 209.102(1). It is charged with the general supervision and administration of Michigan's property tax laws, as well as assisting and advising state assessing officers in the proper administration of Michigan's assessment and levying laws when necessary. M.C.L.A. § 209.104. The Commission is housed within the Department of Treasury and acts by a majority vote of its members. (ECF No. 33-1 (Executive Order No. 2009-51).) The Commission exercises its duties and functions independently of the State Treasurer. (*Id.* at PageID.263.)

The Commission is also responsible for educating, training, and certifying assessing officers, or MCAOs, who are generally employed by local units of government. M.C.L.A. § 211.10d. To obtain an MCAO certification, an applicant is required to complete coursework, either by attending classes or through the self-study program, and to pass an examination. (ECF Nos. 37-1, 37-2.)

---

[2] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the Court conduct all further proceedings in this case, including entry of judgment. (ECF No. 36.)

Ostergren elected to pursue the self-study program. To participate in the self-study program, an applicant was required to submit a completed application and pay a $250 fee, $200 of which was for the self-study material and remaining $50 for the examination fee. (ECF No. 37-2.) The self-study materials covered nine major areas pertinent to assessment of property under Michigan law. (ECF No. 37 at PageID.284.) In addition, at the time Ostergren applied for the self-study program, applicants were required to sign a form NDA prohibiting disclosure of the course materials. (ECF No. 37-3 at Page ID.300.) The NDA provides:

> 1. **Confidential Information.** The content of the course material and Exam, including without limitation, questions, answers, or any communication, including oral communication, regarding or related to the Exam is [Commission] confidential information ("Confidential Information"). Any disclosure of Confidential Information is a violation of this NDA and could compromise the integrity and security of the MCAO Certification Program. The Candidate is expressly prohibited from disclosing, publishing, reproducing, copying, selling, posting, downloading or transmitting any Confidential Information, in whole or in part, in any form or by any means, oral or written, electronic or mechanical, for any purpose.
>
> 2. **Certification Revocation.** The Candidate acknowledges and agrees his/her assessing certification may be jeopardized and/or revoked by the [Commission] if this NDA is violated in any manner.

(*Id.* at PageID.301.) Ostergren submitted his application, paid the fee, and signed the NDA. Thereafter, he took and passed the examination and was issued his MCAO certification. (ECF No. 37 at PageID.286.)

Armed with his MCAO certification, Ostergren again attempted to persuade Gerrish Township officials that the assessor was improperly re-assessing properties, to no avail. So, Ostergren took to the Internet and posted a portion of the MCAO self-study materials relating to re-assessing to his social media page. (*Id.*) In April 2018, Ostergren filed an administrative complaint with the Commission, complaining about improper assessment of property in Gerrish

Township. Defendant Frick, the Commission's Executive Director at the time, responded to the complaint, denying it in full. (*Id.*)

In January 2019, the Commission learned about Ostergren's online posting of MCAO self-study materials in violation of the NDA. On January 15, 2019, Frick notified Ostergren by letter that the Commission's staff had recommended that Ostergren be referred to the Assessor Discipline Advisory Committee (ADAC) for an informal hearing to "weigh the information presented to them" and make a recommendation to the Commission regarding action against Ostergren's certification. (*Id.* at PageID.287; ECF No. 37-6.) The ADAC held the informal hearing on February 21, 2019. Following the hearing, the ADAC recommended that the Commission take no disciplinary action against Ostergren's certification. The Commission adopted the ADAC's recommendation at its April 8, 2019 meeting. (ECF No. 37-7 at PageID. 320.)

Ostergren filed his complaint in the instant case on February 24, 2019, in the period of time between the ADAC informal hearing and the Commission's April 8, 2019 adoption of the no-action recommendation. Ostergren sued only Frick in both her individual and official capacities. In its post-complaint June 11, 2019 meeting, the Commission unanimously approved a motion to discontinue use of the NDA in the assessor certification process and enforcement of existing NDAs. (ECF No. 37-10 at PageID.349.)

In May 2019, Defendant Buick was appointed to replace Frick as the Commission's Executive Director. (ECF No. 33-3.) On August 13, 2019, the Court granted Ostergren's motion to substitute Buick for Frick regarding the official capacity claim and ordered Ostergren to file a second amended complaint adding Buick in his capacity as Executive Director and dismissing

Ostergren's class allegations. (ECF No. 36.) Ostergren filed his second amended complaint on August 13, 2019. (ECF No. 37.)

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided they are referenced in the complaint and central to its claims. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008).

## III. ANALYSIS

Ostergren alleges two claims against Defendants. First, he contends that the NDA constituted an unlawful prior restraint in violation of the First Amendment. (ECF No. 37 at PageID.291 ("The NDA . . . is a form of prior restraint and is unenforceable as a direct and clear violation of the First Amendment to the United States Constitution.").) Second, Ostergren alleges that the NDA violated his right to due process under the Fourteenth Amendment by conditioning his access to an MCAO certification upon the imposition of an unlawful prior restraint. (*Id.* at PageId.292.) Ostergren sues Frick in her individual capacity for money damages and sues Buick in his official capacity pursuant to the doctrine of *Ex parte Young*, 209 U.S. 123, 155–56 (1908), which excepts from Eleventh Amendment immunity suits against "state officials to stop ongoing constitutional violations." *McNeil v. Cmty. Probation Services, LLC*, 945 F.3d 991, 994 (6th Cir. 2019).

Defendants argue that Ostergren's claims against Frick are barred by qualified immunity and that his claims against Buick for injunctive relief are moot.

### A. <u>Defendant Frick</u>

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

6

have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, __ U.S. __, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308 (2015)). "'[C]learly established law' may not be defined at such 'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir.

7

2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* (quoting *White*, 137 S. Ct. at 552). Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019).

### 1. Prior Restraint

The Court analyzes this claim under both steps of the qualified immunity analysis. The first question is whether Ostergren has stated a claim that the NDA constitutes a prior restraint.

The notion of prior restraint is well established in the law of the United States. In broad terms, "[a] prior restraint is any law 'forbidding certain communications when issued in advance of the time that such communications are to occur." *McGlone v. Bell*, 681 F.3d 718, 733 (6th Cir. 2012) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)); *see also Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 400 (6th Cir. 2001) ("A 'prior restraint' exists when the exercise of a First Amendment right depends on the prior approval of public officials."). Because they are inimical to the First Amendment, "prior direct restraints by government upon First Amendment freedoms of expression and speech must be subjected by the courts to the closest scrutiny." *CBS Inc. v. Young*, 522 F.2d 234, 238 (6th Cir. 1975). Prior restraints are not "unconstitutional per se," but they bear a heavy presumption against constitutional validity. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975). The Supreme Court has cautioned that in determining whether a law impermissibly restrains future speech, it is important to distinguish between a prior restraint and a subsequent punishment. *Alexander v. United States*, 509 U.S. 544, 554 (1993). The *Alexander* Court explained, "While we may have given a broader definition to the term "prior restraint" than was

given to it in English common law, our decisions have steadfastly preserved the distinction between prior restraints and subsequent punishments." *Id.* at 553–54 (footnote omitted). This distinction matters because the First Amendment affords greater protection from prior restraints than from subsequent punishments. *Id.*; *see also Southeastern Promotions*, 420 U.S. at 558–59 (noting that prior restraints bear a heavier presumption of invalidity than subsequent punishments because "a free society prefers to punish the few who abuse rights of free speech after they break the law than to throttle them and all others beforehand").

Prior restraints arise in various contexts. As the Sixth Circuit observed in *Schmitt v. LaRose*, 933 F.3d 628 (6th Cir. 2019), "prior restraint challenges typically emerge from licensing schemes that directly target core expressive conduct and 'authorize a licensor to pass judgment on the content of speech.'" *Id.* at 638 (quoting *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002)). The primary concern with laws or ordinances requiring a permit or license to engage in speech "is that they create a risk of government censorship of expressive activity." *Id.* The Supreme Court has held that, when a licensing scheme is directed at content, it must provide certain procedural safeguards: (1) any restraint prior to judicial review must be brief; (2) judicial review of the decision must be expeditious; and (3) the censor must bear the burden of initiating judicial review to suppress the speech and the burden of proof once in court. *Freedman v. Maryland*, 380 U.S. 51, 58–60 (1965). Even where the scheme is content neutral, as was the case with the park-use permitting scheme in *Thomas v. Chicago Park District*, 534 U.S. 316 (2002), it must still contain "adequate standards to guide the official's decision and render it subject to effective judicial review." *Id.* at 323.

"[A]dministrative and judicial orders that block expressive activity before it can occur" are also forms of prior restraint. *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d

9

503, 506 (6th Cir. 2001) (citing *Alexander*, 509 U.S. at 550). "Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints." For example, in *Near v. Minnesota*, 283 U.S. 697 (1931), the Court invalidated an injunction against a newspaper under a Minnesota statute allowing a court to enjoin any newspaper publishing malicious, scandalous, or defamatory material. The Court held that a statute constitutes a prior restraint "if the object of the statute is not punishment, in the ordinary sense, but suppression of the offending newspaper or periodical" and "the statute not only operates to suppress the offending newspaper or periodical but to put the publisher under an effective censorship." *Id.* at 709–12. In *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996), the Sixth Circuit held that the district court should not have enjoined a business magazine from publishing documents that had been filed under seal pursuant to a protective order. Whether the magazine's journalists had improperly obtained the documents was not an appropriate basis for issuing a prior restraint. *Id.* at 225. The court observed that a restraint would be justified only where "publication . . . threaten[s] an interest more fundamental than the First Amendment itself." *Id.* at 226–27.

However, courts have recognized that an injunction may be proper where a party improperly obtains or discloses information in violation of a confidentiality agreement. *See Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745, 753 (E.D. Mich. 1999). In *National Abortion Federation v. Center for Medical Progress*, No. 15-cv03522, 2016 WL 454082 (N.D. Cal. Feb. 5, 2016), *aff'd*, 685 F. App'x 623 (9th Cir. 2017), the court enjoined the defendants from publishing recordings obtained by false pretenses. The court concluded that its order was not an unconstitutional restraint because the defendants had signed confidentiality agreements:

> Defendants also claim that the injunction is an unconstitutional prior restraint. They ignore that they agreed to keep the information secret and agreed to the

10

> remedy of an injunction if they breached the agreement. Confidentiality agreements are common to protect trade secrets and other sensitive information, and individuals who sign such agreements are not free to ignore them because they think the public would be interested in the protected information.

*Id.* at *2.

Courts, including the Sixth Circuit, have also extended "prior restraint" principles to the public employment context. *See Whitney v. City of Milan*, 677 F.3d 292, 296 (6th Cir. 2012) ("As Whitney raised a First Amendment prior-restraint claim, we apply the two-part *Pickering* analysis to determine whether Crider's order was an unconstitutional prior restraint of a public employee's speech."). However, public employment involves different considerations. "A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Thus, while a government employer is entitled to prohibit certain speech, the prohibition may be unlawful if it inhibits the employee's comments as a private citizen on a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 140 (1983); *see also Barr v. Jefferson Cty. Bd. of Educ.*, 311 F. App'x 817, 821 (6th Cir. 2009) (noting that although the plaintiff teacher's claim of retaliation was more properly characterized as a prior restraint on speech, the *Pickering/Connick* balancing test still applied). *Harris v. Noxubee County*, 350 F. Supp. 3d 592 (S.D. Miss. 2018), which Defendants cite, was a public employment case brought by a plaintiff who refused to sign an agreement prohibiting discussion of "any matters concerning the business or conduct of business" of the tax assessor's office. *Id.* at 595. The plaintiff argued that the agreement was a presumptively-invalid prior restraint. Citing *Moore v. City of Kilgore*, 877 F.2d 364 (5th Cir. 1989), the court rejected the argument because the Fifth Circuit had held that a government employer's speech policy such as the one at issue was not a prior restraint but an "'after the fact' sanction, not severe enough to

receive the suspect treatment given to prior restraints." *Id.* at 597 (quoting *Moore*, 877 F.2d at 392).

Because Ostergren was not employed by the Commission or the State of Michigan, public employment cases are not particularly helpful here. Nor is the NDA easily classified as a traditional form of prior restraint. It was not an administrative or judicial order restraining speech. And it did not condition Ostergren's speech on the Commission's prior approval. To the extent that the NDA affects speech, it is more properly considered a restriction that imposes subsequent punishment rather than a prior restraint, as it specifies that an assessor who violates its provisions may be subject to discipline, including revocation of his MCAO certification. *See Kesterson v. Kent State Univ.*, 345 F. Supp. 3d 855, 879–80 (N.D. Ohio 2018) (holding that the defendant's request that the plaintiff not speak to anyone about an alleged sexual assault was a restriction that impliedly imposed subsequent punishment and not a prior restraint because the defendant did not require that the plaintiff seek her permission to speak about the assault, did not reserve the right to screen or censor the plaintiff's statements, and did not require the plaintiff to wait for approval before speaking).

In the Court's judgment, however, the NDA is not a restriction on speech at all, but a waiver of Ostergren's right to disseminate or speak about the contents of the MCAO course materials and exam.[3] As the court recognized in *National Abortion Federation*, *supra*, a binding agreement not to disclose certain information can waive First Amendment rights and vitiate any concern about a prior restraint. 2016 WL 454082, at *17, 21. The Sixth Circuit has recognized that a party may waive its First Amendment rights where there is "clear and compelling" evidence "that such rights were waived." *Sambo's Rests., Inc. v. City of Ann Arbor*, 663 F.2d 686, 690 (6th Cir. 1981) (citing

---

[3] Alternatively, because Ostergren had no right to access the self-study materials or the exam before he paid the $250 fee, the NDA can properly be viewed as a limitation on whatever rights Ostergren acquired when he paid the fee.

*Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 145 (1967)). Here, the plain terms of the NDA provide the requisite "clear and compelling" evidence to show that Ostergren waived his First Amendment rights. While not directly on point, *Yoder v. University of Louisville*, 526 F. App'x 537 (6th Cir. 2013), supports this conclusion. The plaintiff in *Yoder*, a student in the University of Louisville's School of Nursing (SON), was dismissed from the program for posting confidential information on her MySpace.com webpage. *Id.* at 540–42. The plaintiff had signed an honor code pledge, a confidentiality agreement, pursuant to which she agreed to maintain the confidentiality of certain information entrusted to her while at the SON, and a consent form. In addressing qualified immunity on the plaintiff's First Amendment claim, the court considered only whether the violation was clearly established, but it observed that the defendants were not objectively unreasonable in believing that the plaintiff had waived any First Amendment right she may have had to post the information online by signing the confidentiality agreement and the consent form. *Id.* at 546. While Ostergren is correct that the plaintiff in *Yoder* did not allege that the cited documents amounted to a prior restraint, the court's discussion on waiver is nonetheless pertinent to the analysis here. The NDA is not a prior restraint.[4]

Turning to the second prong of the qualified immunity analysis—whether the right was clearly established—the foregoing discussion amply demonstrates that it was not sufficiently clear to Defendants that a valid nondisclosure or confidentiality agreement constituted an improper prior restraint. At best, Ostergren relies on "general statements of the law," which may, in some circumstances, provide adequate guidance to public officials. *White*, 137 S. Ct. at 522 (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)). But the "unlawfulness must be apparent," *id.*

---

[4] Defendants argue in their brief that the NDA was not overbroad. (ECF No. 39 at PageID.372.) As Ostergren has not pled an overbreadth claim in his second amended complaint and did not argue overbreadth in his response, no such claim is before the Court.

(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1997)), and given the lack of any case from the Supreme Court, the Sixth Circuit, or any other court suggesting that a nondisclosure or confidentiality agreement can amount to a prior restraint under these or analogous circumstances, that standard is not met here.

### 2. Unconstitutional Conditions Claim

Ostergren's second claim invokes the unconstitutional conditions doctrine. As relevant here, the doctrine provides that "the government may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit." *United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 210 (2003) (internal quotation marks omitted). The Court's preceding discussion concluding that the NDA did not constitute a prior restraint effectively disposes of this claim. This is because Ostergren's prior restraint claim is the foundation of his unconstitutional conditions claim. (ECF No. 37 at PageID.292 ("By conditioning the terms of obtaining a MCAO license upon the condition of imposing prior restraint, Defendants . . . are violating and has [sic] previously violated the due process rights of Plaintiff . . . under the doctrine of unconstitutional conditions.").) Accordingly, this claim will be dismissed as well.

### B. <u>Defendant Buick</u>

The only issue regarding the claims against Defendant Buick is whether they have become moot as a result of the Commission's decision to no longer use or enforce the NDA. Because the Court has concluded that Ostergren fails to allege a violation of his constitutional rights by Defendant Frick, his claim against Buick for injunctive relief also fails. *See Brown v. U.S. Bank Nat'l Ass'n*, No. 12-3005, 2013 WL 12049109 (W.D. Tenn. Nov. 21, 2013) ("Because the court

has found that all of Brown's claims asserted in her amended complaint fail as a matter of law[,] . . . Brown's request for injunctive relief also fails as a matter of law.").

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss and dismiss Ostergren's second amended complaint with prejudice.

An Order consistent with this Opinion will enter.


Dated: March 30, 2020  /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge